IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN GALIK,

      Plaintiff,              No. 2: 09-cv-0152 KJN P

   vs.

A. NANGALAMA, et al.,           ORDER AND

      Defendants.        FINDINGS & RECOMMENDATIONS

_____/

I.  Introduction

       Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion to dismiss and, in the alternative, motion for summary judgment, filed June 1, 2011.  After carefully considering the record, the undersigned recommends that defendants' motion be denied in part and granted in part.

II.  Background

       This action is proceeding on the third amended complaint as to defendants Nangalama and Duc.  Plaintiff alleges that he received inadequate medical care for several problems.  Plaintiff does not allege that defendants were directly involved with his medical care for these problems.  Rather, plaintiff alleges that defendants were aware of the inadequate

medical care provided by other prison officials and failed to take steps to ensure that he received

adequate medical care.

*Back Injury*

Plaintiff alleges that he did not receive adequate medical care for a back injury he

suffered in March 2007. (Dkt. No. 27 at 2.) Plaintiff alleges that between March 5, 2007, and

August 1, 2007, he submitted eight CDC 7362 forms requesting to be seen for his back injury.

(Id. at 3.) Plaintiff also alleges that on April 30, 2007, prison officials ordered a back brace for

him. (Id.) Plaintiff still had not received the back brace on June 7, 2007. (Id. at 4.) On May 15,

2007, plaintiff requested an x-ray for his back. (Id.) On June 13, 2007, Gabriel Borges ordered

x-rays of plaintiff's back. (Id.) On July 19, 2007, plaintiff submitted a CDC 7362 form

requesting information about the egg crate mattress that had been ordered for his back. (Id. at 4.)

On July 26, 2007, plaintiff submitted a CDC 7362 form asking about the x-rays that had been

ordered, but not yet taken. (Id.)

On August 11, 2007, x-rays were taken of plaintiff's back. (Id.) On August 13,

2007, Katherine Blackwell told plaintiff that his back injury had "healed over" and there was

nothing that could be done to remedy the lost mobility and discomfort he would experience. (Id.)

*Mouth Sores*

On August 28, 2007, plaintiff submitted a CDC 7362 form requesting to be seen

by medical staff for mouth sores. (Id. at 5.) On April 30, 2008, plaintiff submitted another CDC

7362 form requesting to be seen by medical staff for mouth sores. (Id.) On April 29, 2008,

plaintiff was seen by a "doe" defendant for his mouth sores, but no treatment was provided. (Id.)

Plaintiff submitted CDC 7362 forms requesting treatment for the sores in his mouth on May 19,

2008, and June 5, 2008. (Id. at 5.) On July 9, 2008, Dr. Wedell examined plaintiff, but provided

no treatment for his mouth sores. (Id.) On August 5, 2008, plaintiff submitted a CDC 7362 form

requesting treatment for his mouth sores. (Id.)

////

On September 8, 2008, plaintiff went to the emergency room for treatment for his mouth sores, but no treatment was provided.  (Id. at 6.)   The medical staff at the emergency room told plaintiff to notify nursing staff if the sores got any worse.  (Id.)  On October 10, 2008, plaintiff was seen by defendant "doe" for follow-up on his mouth sores.  (Id.)  Plaintiff was again instructed to notify nursing staff if his mouth sores got any worse.  (Id.)

*Hepatitis C – Allergic Reaction*

Plaintiff alleges that on August 5, 2007, he was prescribed treatment for Hepatitis C.  (Id.)   Plaintiff suffered an allergic reaction as a result of the interaction between his Hepatitis C medication and other medications he was taking.  (Id.)

On October 24, 2007, plaintiff submitted a CDC 7362 form seeking treatment for his allergic reaction.  (Id.)  Between October 21, 2007, and October 27, 2007, plaintiff suffered severe burning, itching, and welts and rashes over a large portion of his body.  (Id. at 6-7.)  On October 31, 2007, plaintiff was seen by defendant "doe" for treatment for the allergic reaction.  (Id. at 6.)  Plaintiff alleges that it took approximately eight days for him to be seen by defendant "doe" because this defendant determined that the allergic reaction did not meet emergency criteria.  (Id. at 7.)

On November 9, 2007, and December 17, 2007, plaintiff submitted CDC 7362 forms requesting treatment for the rash caused by the allergic reaction.  (Id. at 8.)   On December 21, 2007, plaintiff was examined by Dr. Sogge who provided no treatment for the rash.  (Id.)

*Hepatitis C – Discontinuation of Treatment*

Plaintiff alleges that on December 25, 2007, his Hepatitis C treatment was discontinued.  (Id. at 7.)  Plaintiff was informed that the treatment was not "in stock" and they would have to get more.  (Id.)  Plaintiff alleges that for the Hepatitis C treatment to work, it must be administered on a rigid schedule.  (Id.)  Plaintiff alleges that had he voluntarily requested to stop the treatment once it began, he would have been subject to disciplinary action.  (Id.)

////

1    On December 31, 2007, plaintiff was denied the last two injections for the

2  Hepatitis C treatment because defendant "doe" did not have enough time to get the injections

3  from the pharmacy.  (Id. at 9.)

4    On June 5, 2008, plaintiff submitted a CDC 7362 form requesting to be seen by

5  medical staff regarding the discontinuation of the Hepatitis C treatment and to have his viral

6  levels checked.  (Id.)  On August 5, 2008, plaintiff submitted another CDC 7362 form requesting

7  testing of his viral levels.  (Id.)  Plaintiff alleges that there has been no satisfactory treatment for

8  his Hepatitis C since the discontinuation of his treatment.  (Id.)

9    *Chest Pains*

10    On January 5, 2008, plaintiff experienced severe chest pains and notified Housing

11  Unit Custody Staff.  (Id.)  Defendant "doe" determined that plaintiff's condition did not warrant

12  emergency care.  (Id.)  On January 10, 2008, plaintiff submitted a CDC 7362 form requesting to

13  be seen by medical staff for the chest pains.  (Id. at 10.)  On January 11, 2008, plaintiff was seen

14  at the R.N. Line for chest pains and referred to cardiology.  (Id.)

15    On January 11, 2008, plaintiff experienced severe chest pains and was taken to the

16  emergency room where he was given an E.K.G. test.  (Id. at 9.)  Plaintiff received no other

17  treatment.  (Id. at 10.)

18    On January 17, 2008, defendant "doe" failed to ducat plaintiff for his medical

19  appointment and instead recorded plaintiff as a "no show" and that he "refused to come to

20  clinic."  (Id.)  Plaintiff had never been informed of the appointment.  (Id.)

21    On January 19, 2008, plaintiff was seen by N.P. Bakewell who noted "possible

22  angina."  (Id. at 11.)  N.P. Bakewell ordered blood pressure checks and scheduled a follow-up

23  appointment.  (Id.)

24    On March 12, 2008, plaintiff submitted a CDC 7362 form requesting a cardiology

25  appointment.  (Id.)

26  ////

4

1    On September 24, 2008, plaintiff was seen by defendant "doe" in the A Facility

2    triage area regarding recurring chest pains.  (Id.)  Defendant "doe" referred plaintiff to "TTA for

3    evaluation" and rescheduled plaintiff for the M.O. line.  (Id.)  Defendant "doe" provided plaintiff

4    with no additional treatment for his chest pains.  (Id.)

5        *Medication Refills*

6        Between January 1, 2007, and October 1, 2008, plaintiff submitted 87 CDC 7362

7    forms regarding medication refills.  (Id.)  Forty of these forms concerned prescriptions that had

8    expired for which plaintiff had not received refill prescriptions.  (Id.)  In the amended complaint,

9    plaintiff discusses these requests.  (Id. at 11-18.)

10        *Defendants' Involvement*

11        Plaintiff alleges that he had difficulty obtaining medical care due to the lack of a

12    standardized processing procedure for 7362 forms, which caused plaintiff to receive untimely

13    medical care.  (Id. at 19.)  Plaintiff also alleges that he received inadequate medical care due to

14    improperly trained staff.  (Id.)  Plaintiff also alleges that the lack of a standardized medication

15    refill procedure prevented him from obtaining timely prescription refills.  (Id.)  Plaintiff also

16    alleges that staff shortages caused him to receive inadequate medical care.  (Id. at 20.)

17        Plaintiff alleges that defendants Duc and Nangalama were aware of the problems

18    plaintiff had in obtaining medical care and getting his medications refilled.  Plaintiff alleges that

19    he informed defendant Duc of these problems through the inmate appeals process and through

20    personal communications.  (Id.)  Plaintiff alleges that defendant Nangalama was also aware of

21    the problems plaintiff had in obtaining medication refills and receiving treatment.  (Id.)  Plaintiff

22    alleges that defendants took no steps to remedy these problems.  (Id.)

23    III.  Defendant Nangalama

24        Plaintiff generally alleges that defendant Nangalama knew of the inadequate

25    medical care plaintiff received and failed to act to ensure that he received adequate medical care.

26    However, plaintiff does not specifically allege when or how defendant Nangalama was made

1    aware of the alleged deprivations.  Despite the vagueness of this claim, in an abundance of

2    caution, the undersigned ordered service of defendant Nangalama.  The undersigned anticipated

3    that plaintiff's claims against defendant Nangalama would be made more clear following

4    discovery or other pretrial motions.  However, plaintiff's claims against defendant Nangalama

5    have not been clarified.

6            In his opposition to defendants' motion to dismiss or for summary judgment,

7    plaintiff's only argument regarding defendant Nangalama is that he refused to provide plaintiff

8    with an x-ray of his back during the months immediately following his March 2007 back injury.

9    Plaintiff's third amended complaint contains no claim that defendant Nangalama denied

10   plaintiff's request for an x-ray.  Plaintiff may not amend his complaint by way of an opposition to

11   a summary judgment motion.

12           In the motion to dismiss, defendants acknowledge that defendant Nangalama

13   denied two administrative grievances filed by plaintiff alleging inadequate medical care.  After

14   reviewing the record, it is not clear whether plaintiff is basing defendant Nangalama's liability on

15   his review of these grievances or on other unspecified communications.  At this stage of the

16   litigation, the claims against this defendant should be clear.

17           Plaintiff's claims against defendant Nangalama are vague and conclusory, and

18   plaintiff has not clarified these claims despite having several opportunities to do so.  Without

19   knowing how or when plaintiff is claiming defendant Nangalama knew of the alleged

20   deprivations, neither defendants nor the court can properly evaluate plaintiff's claims against this

21   defendant.  Accordingly, the undersigned recommends that the claims against defendant

22   Nangalama be dismissed.  28 U.S.C. § 1915(e)(2)(B)(ii) (at any time the court may dismiss a

23   claim that fails to state a claim upon which relief may be granted).

24   ////

25   ////

26   ////

1   IV.  Motion to Dismiss

2            The undersigned considers the motion to dismiss as to defendant Duc.

3        A.  Legal Standard

4            The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e

5   to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

6   § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

7   facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

8   Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  Porter v. Nussle, 534 U.S.

9   516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding conditions of

10  confinement, whether they involve general circumstances or particular episodes, and whether

11  they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

12           Exhaustion of all "available" remedies is mandatory; those remedies need not

13  meet federal standards, nor must they be "plain, speedy and effective."  Id. at 524; Booth v.

14  Churner, 532 U.S. 731, 740 n.5 (2001).  Even when the prisoner seeks relief not available in

15  grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  Booth, 532

16  U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative

17  process that could provide some sort of relief on the complaint stated, but no money."  Id. at 734.

18  The fact that the administrative procedure cannot result in the particular form of relief requested

19  by the prisoner does not excuse exhaustion because some sort of relief or responsive action may

20  result from the grievance.  See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes

21  of exhaustion requirement include allowing prison to take responsive action, filtering out

22  frivolous cases, and creating administrative records).

23           However, a prisoner need not exhaust further levels of review once he has either

24  received all the remedies that are "available" at an intermediate level of review, or has been

25  reliably informed by an administrator that no more remedies are available.  Brown v. Valoff, 422

26  F.3d 926, 934-35 (9th Cir. 2005).  Because there can be no absence of exhaustion unless some

1   relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent

2   relief remained available, whether at unexhausted levels or through awaiting the results of the

3   relief already granted as a result of that process. <u>Brown</u>, 422 F.3d at 936-37.

4          As noted above, the PLRA requires proper exhaustion of administrative remedies.

5   <u>Woodford v. Ngo</u>, 548 U.S. 81, 83-84 (2006). "Proper exhaustion demands compliance with an

6   agency's deadlines and other critical procedural rules because no adjudicative system can

7   function effectively without imposing some orderly structure on the course of its proceedings."

8   <u>Id.</u> at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to

9   properly exhaust. <u>Id.</u> The PLRA's exhaustion requirement cannot be satisfied "by filing an

10  untimely or otherwise procedurally defective administrative grievance or appeal." <u>Id.</u> at 83-84.

11         The State of California provides its prisoners the right to appeal administratively

12  "any departmental decision, action, condition or policy which they can demonstrate as having an

13  adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2010). It also provides

14  them the right to file appeals alleging misconduct by correctional officers and officials. <u>Id.</u> at

15  § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner

16  must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal

17  on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and

18  (4) third level appeal to the Director of the California Department of Corrections and

19  Rehabilitation. <u>Barry v. Ratelle</u>, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal.Code

20  Regs. tit. 15, § 3084.5). A final decision from the Director's level of review satisfies the

21  exhaustion requirement under § 1997e(a). <u>Id.</u> at 1237-38.

22         Non-exhaustion under § 1997e(a) is an affirmative defense which should be

23  brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil

24  Procedure 12(b). <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003). Moreover, the court

25  may look beyond the pleadings to determine whether a plaintiff exhausted his administrative

26  remedies. <u>Id.</u> at 1119-20.

1        Although exhaustion is mandatory, an inmate must only exhaust administrative

2    remedies "as are available."  42 U.S.C. § 1997e(a).  Under the Ninth Circuit law, exhaustion is

3    excused when improper screening of grievances occurs.  Sapp v. Kimbrell, 623 F.3d 813, 822

4    (9th Cir. 2010) (citing Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010)).  Sapp establishes

5    that "improper screening of an inmate's administrative grievances renders administrative

6    remedies 'effectively unavailable' such that exhaustion is not required under [§ 1997e(a)]."  Id.

7    at 823.  If prison officials screen out an inmate's grievances or appeals for improper reasons, the

8    inmate cannot pursue the necessary administrative process, and, consequently, his administrative

9    remedies become "unavailable."  Id.

10        B.  Analysis

11        Defendants argue that plaintiff failed to exhaust administrative remedies because

12    he filed two grievances that did not name defendant Duc.  The only evidence offered by

13    defendants in support of their claim that plaintiff did not properly exhaust his administrative

14    remedies is contained in the declaration of defendant Nangalama attached as an exhibit to the

15    motion to dismiss.

16        In his declaration, defendant Nangalama states that plaintiff filed two 602 appeals

17    regarding his treatment for Hepatitis C and chest pain.  (Dkt. No. 37-2 at 3.)  Defendant

18    Nangalama states that in appeal no. H-07-2603, plaintiff alleged that the Hepatitis C medication

19    weakened his immune system and caused an allergic reaction.  (Id.)  Defendant Nangalama

20    interviewed plaintiff regarding this appeal and determined that his access to medical care was

21    appropriate.  (Id.)  Defendant Nangalama states that defendant Duc conducted the second level

22    review.  (Id.)  Defendant Nangalama does not state how he has personal knowledge that

23    defendant Duc conducted the second level review.  For example, defendant Nangalama does not

24    state that he reviewed the relevant appeal, nor is a copy of it attached as an exhibit to defendants'

25    motion.  This appeal was denied at the Director's Level.  (Id.)

26        Defendant Nangalama goes on to state that in plaintiff's second grievance, no. H-

9

1   08-0202, plaintiff complained of a delay in medical care for his chest pain and Hepatitis C.  (Id.)

2   Defendant Nangalama interviewed plaintiff on February 1, 2008, and concluded that plaintiff had

3   received appropriate medical care.  (Id.)  Defendant Nangalama goes on to state that defendant

4   Duc conducted the second level review.  (Id.)  Again, defendant Nangalama does not state how

5   he knows that defendant Duc conducted the second level review.  This appeal was denied at the

6   Directors's Level.  (Id.)

7           For the following reasons, the undersigned finds that defendants have not met

8   their burden of demonstrating that plaintiff failed to exhaust his administrative remedies as to his

9   claims against defendant Duc.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003)

10  (defendant has the burden of raising and proving the absence of administrative exhaustion).

11          First, defendants present no evidence that the two grievances filed by plaintiff

12  discussed by defendant Nangalama are the *only* grievances plaintiff filed relevant to this action.

13  In his declaration, defendant Nangalama does not address whether plaintiff filed grievances

14  regarding his back injury, medication refills or mouth sores.  For this reason, the undersigned

15  finds that defendants have not demonstrated that plaintiff failed to exhaust administrative

16  remedies as to his claims regarding his back injury, medication refills and mouth sores.

17          The only evidence provided by defendants regarding plaintiff's exhaustion of

18  remedies as to his claims regarding Hepatitis C and chest pain are defendant Nangalama's

19  statements in his declaration.  Defendants admit that plaintiff's appeals regarding these issues

20  were exhausted at the Director's Level, but argue that they are unrelated to his claims against

21  defendant Duc because they did not name this defendant.

22          Defendants have presented no evidence that plaintiff's appeals did not name

23  defendant Duc.  Defendant Nangalama's declaration does not contain this information, nor have

24  defendants provided copies of the at-issue appeals.

25          Moreover, as stated above, plaintiff is basing defendant Duc's liability based on

26  his responses to plaintiff's grievances.  Plaintiff is claiming that defendant Duc was aware of the

alleged inadequate medical care he received as a result of his involvement in the grievances, and that defendant Duc failed to take steps to ensure that plaintiff received adequate medical care. The undersigned would not find that in order to exhaust his administrative remedies against defendant Duc that plaintiff was required to file yet another round of grievances challenging defendant Duc's denial of his earlier grievances. It is unlikely that such duplicative grievances would even be permitted.

For these reasons, defendants' motion to dismiss based upon plaintiff's alleged failure to exhaust administrative remedies should be denied.

V. Motion for Summary Judgment

A. Legal Standard

Summary judgment is appropriate when a moving party establishes that the standard set forth in Federal Rule of Civil Procedure 56(c) is met. "The judgment sought should be rendered if . . . there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a

11

1  circumstance, summary judgment should be granted, "so long as whatever is before the district

2  court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

3  satisfied."  Id.

4          If the moving party meets its initial responsibility, the burden then shifts to the

5  opposing party to establish that a genuine issue as to any material fact actually exists.  See

6  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

7  establish the existence of such a factual dispute, the opposing party may not rely upon the

8  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

9  form of affidavits, and/or admissible discovery material, in support of its contention that the

10  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

11  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

12  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

13  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

14  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

15  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

16  1436 (9th Cir. 1987).

17          In the endeavor to establish the existence of a factual dispute, the opposing party

18  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

19  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

20  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary

21  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

22  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

23  committee's note on 1963 amendments).

24          In resolving a summary judgment motion, the court examines the pleadings,

25  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

26  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

1    477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

2    court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

3    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

4    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

5    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

6    1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

7    show that there is some metaphysical doubt as to the material facts . . .  Where the record taken

8    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

9    'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

10              B. Analysis

11              In the third amended complaint, plaintiff alleges violations of the Eighth

12   Amendment as well as his right to due process and equal protection.  (Dkt. No. 27 at 21.)

13              Defendants argue that plaintiff does not specifically allege any mistreatment in the

14   medical care rendered by defendant Duc.  As discussed above, plaintiff is claiming that defendant

15   Duc knew of inadequate medical care provided by other prison officials as a result of reviewing

16   plaintiff's administrative grievances and failed to take steps to remedy the inadequate medical

17   care.  Plaintiff is not proceeding on a theory that defendant Duc personally provided inadequate

18   medical care.

19              Defendants sued in their individual capacity must be alleged to have:  personally

20   participated in the alleged deprivation of constitutional rights; known of the violations and failed

21   to act to prevent them; or implemented a policy that repudiates constitutional rights and was the

22   moving force behind the alleged violations.  Larez v. City of Los Angeles, 946 F.2d 630, 646

23   (9th Cir. 1991); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040

24   (9th Cir. 1989).  In addition, where a supervisor has a duty under law to correct unlawful

25   conditions, knows about them, and has the authority to rectify same, he can be held personally

26   liable under an acquiescence theory when he does nothing in light of his knowledge.  Starr v.

13

1   Baca, 2011 WL 2988827 at *4-5 (9th Cir. 2011).

2           "Although a § 1983 claim has been described as 'a species of tort liability,' Imbler

3   v. Pachtman, 424 U.S. 409, 417, it is perfectly clear that not every injury in which a state official

4   has played some part is actionable under that statute." Martinez v. State of California, 444 U.S.

5   277, 285 (1980). "Without proximate cause, there is no § 1983 liability." Van Ort v. Estate of

6   Stanewich, 92 F.3d 831, 837 (9th Cir. 1996).

7                   The search, which was performed in accordance with this
                    constitutionally valid strip search policy, was subsequently ratified
8                   by the School Board when Mr. Williams filed a grievance.
                    Therefore, Williams' only grasp at evoking municipal liability
9                   under § 1983 is to show that this subsequent ratification is
                    sufficient to establish the necessary causation requirements. Based
10                  on the facts, the Board believed Ellington and his colleagues were
                    justified in conducting the search of Williams. There was no
11                  history that the policy had been repeatedly or even sporadically
                    misapplied by school board officials in the past. Consequently, the
12                  School Board cannot be held liable for the ratification of the search
                    in question, because this single, isolated decision can hardly
13                  constitute the "moving force" behind the alleged constitutional
                    deprivation.
14

15   Williams v. Ellington, 936 F.2d 881, 884–885 (9th Cir. 1991).

16           This court is unwilling to adopt a rule that anyone involved in adjudicating

17   grievances *after the fact* is per se potentially liable under a ratification/acquiescence theory.

18   However, this is not to say that persons involved in adjudicating administrative disputes, or

19   persons to whom complaints are sometimes made can never be liable under a ratification theory.

20   If, for example, a reviewing official's rejections of administrative grievances can be construed as

21   an automatic whitewash, which may have led other prison officials to have no concern of ever

22   being reprimanded, a ratifying official may be liable for having put a defective policy in place.

23   Certainly factual allegations (as opposed to conclusions) of conspiracy between the line officials

24   and the grievance reviewers could land the reviewers in court.

25           Defendant Duc is potentially liable under the Eighth Amendment based on his

26   review of grievances filed after the fact or based on his review of grievances challenging ongoing

1   violations.  The only evidence presented by defendants regarding defendant Duc's review of

2   plaintiff's grievances is contained in defendant Nangalama's declaration.  However, defendant

3   Nangalama does not state how he has personal knowledge of the grievances reviewed by

4   defendant Duc.  See Certain Underwriters at Lloyd's of London v. American Safety Insurance

5   Services, Inc., 702 F.Supp.2d 1169, 1172 (C.D. Cal. 2010) ("Declarations made upon

6   'information and belief' rather than upon personal knowledge are entitled to no weight at

7   summary judgment.")   For example, defendant Nangalama does not state that he personally

8   reviewed defendant Duc's responses to plaintiff's grievances.

9          Additionally, defendant Nangalama's declaration addresses only grievances

10  concerning plaintiff's treatment for Hepatitis C and chest pains.  Defendant Nangalama does not

11  discuss whether plaintiff filed grievances regarding his other at-issue medical problems.  For that

12  reason, the undersigned finds that defendants' summary judgment motion contains no evidence

13  regarding defendant Duc's alleged denial of grievances concerning plaintiff's back injury, mouth

14  sores and problems in obtaining medication refills.

15         Assuming defendant Nangalama's statements regarding defendant Duc's review

16  of plaintiff's grievances concerning chest pain and Hepatitis C were based on personal

17  knowledge, the undersigned would find these statements of little evidentiary value.  Defendant

18  Nangalama's statement that defendant Duc determined that plaintiff received appropriate medical

19  care after reviewing plaintiff's chart does not adequately explain the grounds on which defendant

20  Duc made this decision.  For example, the undersigned could not evaluate defendant Duc's

21  decision to uphold the decision to discontinue plaintiff's Hepatitis C treatment based on these

22  conclusory statements.

23         Because defendants' evidence regarding defendant Duc's review of plaintiff's

24  grievances is entitled to no weight, the undersigned finds that defendants have not met their

25  burden of demonstrating the absence of genuine issues of material fact as to plaintiff's Eighth

26  Amendment claim.

1    Defendants also argue that there is no liability for the mere review of an appeal.

2    Defendants are correct that plaintiff cannot state a due process claim based on the denial of an

3    appeal.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d

4    639, 640 (9th Cir. 1988) (inmates lack a separate constitutional entitlement to a specific prison

5    grievance procedure).  Accordingly, defendant Duc should be granted summary judgment as to

6    plaintiff's due process claim based on the denial of his grievances.

7    Although not addressed by defendants in the motion for summary judgment,

8    plaintiff also alleges a violation of his right to equal protection.  Plaintiff's allegations do not

9    state an equal protection claim.  Accordingly, plaintiff's equal protection claim should be

10   dismissed.  28 U.S.C. § 1915(e)(2)(B)(ii) (at any time the court may dismiss a claim that fails to

11   state a claim upon which relief may be granted).

12   Defendants also move for summary judgment based on qualified immunity.  "The

13   doctrine of qualified immunity protects government officials from liability for civil damages

14   insofar as their conduct does not violate clearly established statutory or constitutional rights of

15   which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, ___, 129 S.

16   Ct. 808, 815 (2009).  The defendant bears the burden of establishing qualified immunity.

17   Crawford-El v. Britton, 523 U.S. 574, 586-87 (1998).

18   The Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), outlined a two-step

19   approach to qualified immunity.  The first step requires the court to ask whether "[t]aken in the

20   light most favorable to the party asserting the injury, do the facts alleged show the officer's

21   conduct violated a constitutional right?"  Saucier, 533 U.S. at 201.  If the answer to the first

22   inquiry is yes, the second inquiry is whether the right was clearly established: in other words,

23   "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

24   confronted."  Saucier, 533 U.S. at 201.

25   The undersigned need not address the issue of qualified immunity because

26   defendants have not met their initial burden of demonstrating the absence of genuine issues of

16

1    material fact as to plaintiff's Eighth Amendment claim.

2              Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall appoint

3    a district judge to this action;

4              IT IS HEREBY RECOMMENDED that:

5              1.  The claims against defendant Nangalama be dismissed for failing to state a

6    claim upon which relief may be granted;

7              2.  Plaintiff's Equal Protection claim against defendant Duc be dismissed for

8    failing to state a claim upon which relief may be granted; and

9              3.  Defendants' motion to dismiss for failure to exhaust administrative remedies

10   (Dkt. No. 37) be denied as to defendant Duc; defendants' summary judgment motion (Dkt. No.

11   37) be granted as to plaintiff's due process claim against defendant Duc, and denied as to the

12   Eighth Amendment claim against defendant Duc.

13             These findings and recommendations are submitted to the United States District

14   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

15   one days after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  Such a document should be captioned

17   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

18   objections shall be filed and served within fourteen days after service of the objections.  The

19   parties are advised that failure to file objections within the specified time may waive the right to

20   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21   DATED:  October 13, 2011

22

23

24   KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

25   gal152.sj(2)

26

17