1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KEVIN GALIK,

11            Plaintiff,                    No. 2: 09-cv-0152 WBS KJN P

12        vs.

13   A. NANGALAMA, et al.,

14            Defendants.           FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17            Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action

18   pursuant to 42 U.S.C. § 1983.  On February 7, 2012, all of plaintiff's claims were dismissed

19   except for the Eighth Amendment claim against defendant Duc alleging inadequate medical care.

20   (Dkt. No. 61.)  On March 28, 2012, the undersigned granted defendant Duc's motion to file a

21   second dispositive motion.  (Dkt. No. 66.)

22            Pending before the court is defendant Duc's summary judgment motion.  (Dkt.

23   No. 69.)  Defendant Duc originally filed this motion on April 18, 2012.  (Id.)  On June 12, 2012,

24   plaintiff filed an opposition.  (Dkt. No. 73.)  On June 15, 2012, defendant filed a reply.  (Dkt.

25   No. 74.)

26   ////

1    On July 19, 2012, the court issued plaintiff notice of the requirements for

2  opposing a summary judgment motion pursuant to <u>Woods v. Carey</u>, 2012 WL 2626912 (9th Cir.

3  July 6, 2012).  (Dkt. No. 75.)   This order gave plaintiff the option of filing a new opposition, a

4  supplemental opposition or a statement that he chooses to rely on his previously filed opposition.

5  (<u>Id.</u>)  This order also deemed defendant Duc's summary judgment motion re-noticed as of the

6  filing date of the order.  (<u>Id.</u>)

7    On August 2, 2012, plaintiff filed a notice stating that he chose to rely on his

8  previously filed opposition.  (Dkt. No. 76.)

9    After carefully reviewing the record, the undersigned recommends that defendant

10  Duc's summary judgment motion be granted.

11  II.  <u>Legal Standard for Summary Judgment</u>

12    Summary judgment is appropriate when a moving party establishes that the

13  standard set forth in Federal Rule of Civil Procedure 56(c) is met.  "The judgment sought should

14  be rendered  if . . . there is no genuine issue as to any material fact, and that the movant  is

15  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

16    Under summary judgment practice, the moving party
      always bears the initial responsibility of informing the district court

17      of the basis for its motion, and identifying those portions of "the
      pleadings, depositions, answers to interrogatories, and admissions

18      on file, together with the affidavits, if any," which it believes
      demonstrate the absence of a genuine issue of material fact.

19

20  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

21  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

22  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

23  file.'"  <u>Id.</u>  Indeed, summary judgment should be entered, after adequate time for discovery and

24  upon motion, against a party who fails to make a showing sufficient to establish the existence of

25  an element essential to that party's case, and on which that party will bear the burden of proof at

26  trial.  <u>See id.</u> at 322.  "[A] complete failure of proof concerning an essential element of the

1 nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such a

2 circumstance, summary judgment should be granted, "so long as whatever is before the district

3 court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

4 satisfied." Id.

5          If the moving party meets its initial responsibility, the burden then shifts to the

6 opposing party to establish that a genuine issue as to any material fact actually exists. See

7 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

8 establish the existence of such a factual dispute, the opposing party may not rely upon the

9 allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

10 form of affidavits, and/or admissible discovery material, in support of its contention that the

11 dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

12 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

13 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

14 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

15 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

16 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

17 1436 (9th Cir. 1987).

18          In the endeavor to establish the existence of a factual dispute, the opposing party

19 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

20 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

21 versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary

22 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

23 genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

24 committee's note on 1963 amendments).

25          In resolving a summary judgment motion, the court examines the pleadings,

26 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

1  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

2  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

3  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

4  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

5  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

6  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

7  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

8  show that there is some metaphysical doubt as to the material facts . . .  Where the record taken

9  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

10  'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

11  III.  Legal Standard for Eighth Amendment Claim

12        Generally, deliberate indifference to a serious medical need presents a cognizable

13  claim for a violation of the Eighth Amendment's prohibition against cruel and unusual

14  punishment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  According to Farmer v. Brennan, 511

15  U.S. 825, 847 (1994), "deliberate indifference" to a serious medical need exists "if [the prison

16  official] knows that [the] inmate [ ] face[s] a substantial risk of serious harm and disregards that

17  risk by failing to take reasonable measures to abate it."  The deliberate indifference standard "is

18  less stringent in cases involving a prisoner's medical needs than in other cases involving harm to

19  incarcerated individuals because 'the State's responsibility to provide inmates with medical care

20  ordinarily does not conflict with competing administrative concerns.'"  McGuckin v. Smith, 974

21  F.2d 1050, 1060 (9th Cir. 1992) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)), overruled

22  on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

23  Specifically, a determination of "deliberate indifference" involves two elements:  (1) the

24  seriousness of the prisoner's medical needs; and (2) the nature of the defendant's responses to

25  those needs.  McGuckin, 974 F.2d at 1059.

26  ////

4

1          First, a "serious" medical need exists if the failure to treat a prisoner's condition

2    could result in further significant injury or the "unnecessary and wanton infliction of pain." Id.

3    (citing Estelle, 429 U.S. at 104).  Examples of instances where a prisoner has a "serious" need for

4    medical attention include the existence of an injury that a reasonable doctor or patient would find

5    important and worthy of comment or treatment; the presence of a medical condition that

6    significantly affects an individual's daily activities; or the existence of chronic and substantial

7    pain.  McGuckin, 974 F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41

8    (9th Cir. 1990)).

9          Second, the nature of a defendant's responses must be such that the defendant

10   purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for

11   "deliberate indifference" to be established.  McGuckin, 974 F.2d at 1060.  Deliberate

12   indifference may occur when prison officials deny, delay, or intentionally interfere with medical

13   treatment, or may be shown by the way in which prison physicians provide medical care."

14   Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988).  In order for deliberate

15   indifference to be established, there must first be a purposeful act or failure to act on the part of

16   the defendant and resulting harm.  See McGuckin, 974 F.2d at 1060.  "A defendant must

17   purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for

18   deliberate indifference to be established." Id.  Second, there must be a resulting harm from the

19   defendant's activities.  Id.  The needless suffering of pain may be sufficient to demonstrate

20   further harm.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

21         Mere differences of opinion concerning the appropriate treatment cannot be the

22   basis of an Eighth Amendment violation.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996);

23   Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  However, a physician need not fail to

24   treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  Ortiz v.

25   City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious

26   medical condition, even if some treatment is prescribed, may constitute deliberate indifference in

1  a particular case.  Id.

2       In order to defeat defendants' motion for summary judgment, plaintiff must

3  "produce at least some significant probative evidence tending to [show]," T.W. Elec. Serv., 809

4  F.2d at 630, that defendants' actions, or failures to act, were "in conscious disregard of an

5  excessive risk to plaintiff's health," Jackson v. McIntosh, 90 F.3d at 332 (citing Farmer, 511 U.S.

6  at 837).

7  IV.  Background

8       This action is proceeding on the third amended complaint.  (Dkt. No. 27.)  The

9  following are plaintiff's allegations that he received inadequate medical care for several

10  problems.

11            *Back Injury*

12       Plaintiff alleges that he did not receive adequate medical care for a back injury he

13  suffered in March 2007.  (Dkt. No. 27 at 2.)  Plaintiff alleges that between March 5, 2007, and

14  August 1, 2007, he submitted eight CDC 7362 forms requesting to be seen for his back injury.

15  (Id. at 3.)  Plaintiff also alleges that on April 30, 2007, prison officials ordered a back brace for

16  him.  (Id.)  Plaintiff still had not received the back brace on June 7, 2007.  (Id. at 4.)  On May 15,

17  2007, plaintiff requested an x-ray for his back.  (Id.)  On June 13, 2007, Gabriel Borges ordered

18  x-rays of plaintiff's back.  (Id.)  On July 19, 2007, plaintiff submitted a CDC 7362 form

19  requesting information about the egg crate mattress that had been ordered for his back.  (Id. at 4.)

20  On July 26, 2007, plaintiff submitted a CDC 7362 form asking about the x-rays that had been

21  ordered, but not yet taken.  (Id.)

22       On August 11, 2007, x-rays were taken of plaintiff's back.  (Id.)  On August 13,

23  2007, Katherine Blackwell told plaintiff that his back injury had "healed over" and there was

24  nothing that could be done to remedy the lost mobility and discomfort he would experience.  (Id.)

25            *Mouth Sores*

26       On August 28, 2007, plaintiff submitted a CDC 7362 form requesting to be seen

1   by medical staff for mouth sores.  (Id. at 5.)  On April 30, 2008, plaintiff submitted another CDC

2   7362 form requesting to be seen by medical staff for mouth sores.  (Id.)  On April 29, 2008,

3   plaintiff was seen by a "doe" defendant for his mouth sores, but no treatment was provided.  (Id.)

4   Plaintiff submitted CDC 7362 forms requesting treatment for the sores in his mouth on May 19,

5   2008, and June 5, 2008.  (Id. at 5.)  On July 9, 2008, Dr. Wedell examined plaintiff, but provided

6   no treatment for his mouth sores.  (Id.)  On August 5, 2008, plaintiff submitted a CDC 7362 form

7   requesting treatment for his mouth sores.  (Id.)

8          On September 8, 2008, plaintiff went to the emergency room for treatment for his

9   mouth sores, but no treatment was provided.  (Id. at 6.)   The medical staff at the emergency

10  room told plaintiff to notify nursing staff if the sores got any worse.  (Id.)  On October 10, 2008,

11  plaintiff was seen by defendant "doe" for follow-up on his mouth sores.  (Id.)  Plaintiff was again

12  instructed to notify nursing staff if his mouth sores got any worse.  (Id.)

13                    *Hepatitis C – Allergic Reaction*

14         Plaintiff alleges that on August 5, 2007, he was prescribed treatment for Hepatitis

15  C.  (Id.)   Plaintiff suffered an allergic reaction as a result of the interaction between his Hepatitis

16  C medication and other medications he was taking.  (Id.)

17         On October 24, 2007, plaintiff submitted a CDC 7362 form seeking treatment for

18  his allergic reaction.  (Id.)  Between October 21, 2007, and October 27, 2007, plaintiff suffered

19  severe burning, itching, and welts and rashes over a large portion of his body.  (Id. at 6-7.)  On

20  October 31, 2007, plaintiff was seen by defendant "doe" for treatment for the allergic reaction.

21  (Id. at 6.)  Plaintiff alleges that it took approximately eight days for him to be seen by defendant

22  "doe" because this defendant determined that the allergic reaction did not meet emergency

23  criteria.  (Id. at 7.)

24         On November 9, 2007, and December 17, 2007, plaintiff submitted CDC 7362

25  forms requesting treatment for the rash caused by the allergic reaction.  (Id. at 8.)   On December

26  21, 2007, plaintiff was examined by Dr. Sogge who provided no treatment for the rash.  (Id.)

1

*Hepatitis C – Discontinuation of Treatment*

2   Plaintiff alleges that on December 25, 2007, his Hepatitis C treatment was

3   discontinued. (Id. at 7.) Plaintiff was informed that the treatment was not "in stock" and they

4   would have to get more. (Id.) Plaintiff alleges that for the Hepatitis C treatment to work, it must

5   be administered on a rigid schedule. (Id.) Plaintiff alleges that had he voluntarily requested to

6   stop the treatment once it began, he would have been subject to disciplinary action. (Id.)

7   On December 31, 2007, plaintiff was denied the last two injections for the

8   Hepatitis C treatment because defendant "doe" did not have enough time to get the injections

9   from the pharmacy. (Id. at 9.)

10   On June 5, 2008, plaintiff submitted a CDC 7362 form requesting to be seen by

11   medical staff regarding the discontinuation of the Hepatitis C treatment and to have his viral

12   levels checked. (Id.) On August 5, 2008, plaintiff submitted another CDC 7362 form requesting

13   testing of his viral levels. (Id.) Plaintiff alleges that there has been no satisfactory treatment for

14   his Hepatitis C since the discontinuation of his treatment. (Id.)

15   *Chest Pains*

16   On January 5, 2008, plaintiff experienced severe chest pains and notified Housing

17   Unit Custody Staff. (Id.) Defendant "doe" determined that plaintiff's condition did not warrant

18   emergency care. (Id.) On January 10, 2008, plaintiff submitted a CDC 7362 form requesting to

19   be seen by medical staff for the chest pains. (Id. at 10.) On January 11, 2008, plaintiff was seen

20   at the R.N. line for chest pains and referred to cardiology. (Id.)

21   On January 11, 2008, plaintiff experienced severe chest pains and was taken to the

22   emergency room where he was given an E.K.G. test. (Id. at 9.) Plaintiff received no other

23   treatment. (Id. at 10.)

24   On January 17, 2008, defendant "doe" failed to ducat plaintiff for his medical

25   appointment and instead recorded plaintiff as a "no show" and that he "refused to come to

26   clinic." (Id.) Plaintiff alleges that he had never been informed of the appointment. (Id.)

1    On January 19, 2008, plaintiff was seen by N.P. Bakewell who noted "possible

2  angina."  (Id. at 11.)  N.P. Bakewell ordered blood pressure checks and scheduled a follow-up

3  appointment.  (Id.)

4    On March 12, 2008, plaintiff submitted a CDC 7362 form requesting a cardiology

5  appointment.  (Id.)

6    On September 24, 2008, plaintiff was seen by defendant "doe" in the A Facility

7  triage area regarding recurring chest pains.  (Id.)  Defendant "doe" referred plaintiff to "TTA for

8  evaluation" and rescheduled plaintiff for the M.O. line.  (Id.)  Defendant "doe" provided plaintiff

9  with no additional treatment for his chest pains.  (Id.)

10    *Medication Refills*

11    Between January 1, 2007, and October 1, 2008, plaintiff submitted 87 CDC 7362

12  forms regarding medication refills.  (Id.)  Forty of these forms concerned prescriptions that had

13  expired for which plaintiff had not received refill prescriptions.  (Id.)  In the amended complaint,

14  plaintiff discusses these requests.  (Id. at 11-18.)

15    *Defendant Duc's Involvement*

16    Plaintiff alleges that defendants Duc was aware of the problems plaintiff had in

17  obtaining medical care and getting his medications refilled.  Plaintiff alleges that he informed

18  defendant Duc of these problems through the inmate appeals process and through personal

19  communications.  (Id. at 20.)  Plaintiff alleges that defendant Duc took no steps to remedy these

20  problems.  (Id.)

21  V.  Analysis

22    Defendant Duc moves for summary judgment on grounds that his only

23  involvement in plaintiff's medical problems described above was his review of two

24  administrative grievances.  Defendant argues that his responses to these grievances did not

25  constitute deliberate indifference.

26  ////

1    Defendant has provided copies of his responses to the two at-issue administrative

2  grievances, H-07-2603 and H-08-0202.  (Dkt. No. 69-4 at 13-15, 26-28.)  Grievance H-07-2603,

3  dated February 25, 2008, addressed plaintiff's claims that his Hepatitis C medication weakened

4  his immune system and caused an allergic reaction, his claim regarding the mouth sore, and his

5  claim regarding a delay in receipt of treatment for his back injury.  In his response to plaintiff's

6  second level appeal, defendant Duc began by describing plaintiff's description of the problem

7  and the action he requested:

8    You contend that you are currently receiving treatment for Hepatitis C and this
     medication weakens your immune system and had allergic reactions.  You broke
9    out in hives and were itching all over your body.  On October 4, 2007, you saw
     the doctor and received Diphenhydramine 50 mg. but it did not stop the itching
10   and irritation.  On October 8, 2007, you wanted to go to the Emergency Room
     (ER) but were told that your situation was not an emergency.  That night, you
11   were sent to the ER and received a shot.  The following night you received
     another shot since your allergic reaction to the medication became worse.  You
12   also state that on September 1, 2007, you had strep throat and were not allowed to
     see the doctor, so you went to the ER.  You had an MRI three months ago but do
13   not have the results.  Eight months ago, you injured your back and it took two
     weeks to see the nurse; two more weeks to see the doctor; and four months to get
14   an x-ray.  You continue to state that you take Fexofenadine 180 mg. for your
     allergies, but it always takes 2-3 weeks to get a refill on your prescription.
15
     You request 1) that the lack and delay of medical care be corrected; 2) to be able
16   to see a doctor on a timely basis preferably before going to the ER, hospital, or
     die; 3) that injuries should be treated before the injury heals over, not months
17   later; 4) that all medications be renewed without delay; 5) that if the doctor does
     not have time to examine you, they should refer you to the ER without delay; 6)
18   that if a doctor does not know what a sore or something is, he should refer you to
     a specialist in a timely manner without delay, not months later; 7) that all test
19   results be delivered in a timely manner and should be investigated from higher up
     for criminal neglect of medical treatment; 8) to receive your MRI results from
20   someone qualified; 9) to see a specialist about the sore in your mouth; 10) to see a
     specialist for pain management for your back and headaches; 11) to get treatment
21   and thyroid medications; 12) access to all your medical records and test results –
     Olsen Review; 13) not to be denied when you request reasonable tests; and 14)
22   that doctors communicate without attitude.

23  (Dkt. No. 69-4 at 13.)

24    Defendant Duc then went on to describe the response to plaintiff's grievance at

25  the First Level of Review:

26  ////

1) Your access to medical care has been appropriate.  2) You have been seen in the Doctor's Line and by Consultants frequently and as requested.  3) You have multiple medical problems and you have ongoing treatments and appointments in different clinics.  4) All your medications are current.  5) You have had access to the Doctor's line and even been referred to outside consultations without limitations.  6) Your records show that you have been referred to GI, Ears, Nose and Throat, Podiatry.  7) Your lab tests have been discussed in the clinic today.  Most of your imaging studies have been discussed.  Other studies are pending.  8) MRI results have been requested and will be discussed with you by a Medical Physician.  9) You have been referred to ENT.  10) You are currently getting treatment for your illness including pain medications.  11) You can get access to your medical records by requesting an Olsen review.  12 and 13) You have had access to medical care including medical clinic and referral to consultations.  14) My communications with patients is based on objectivity, not attitude.

(Id. at 14.)

Defendant Duc then responded to plaintiff's second level grievance as follows:

In requesting a Second Level Review, you state that the problems that you have mentioned in your First Level Appeal have not improved, in fact, you said it got worse.  You also state your First Level Appeal was granted, but nothing has changed and would like to continue this appeal.  You state that the Plata Court order has been violated and this is still a criminal neglect of medical care.

****

The issues you mentioned were addressed adequately at the First Level of Review.  Your Unit Health Record was reviewed.

You were seen in the clinic on August 28, 2007, September 2, 4 and 13, 2007 to treat your sore throat and ear infection.  You were seen on October 9, 2007 for chronic care, Hepatitis and Hyperlipidemia.  You developed a skin rash on October 10, 2007 and was initially treated with Benadryl without relief.  Therefore, Solumedrol was administered later on the same day to address the problem.  You were seen the next day by Dr. Nangalama who continued the treatment with Prednisone and Hydrocortisone cream.  He also ordered an Ear Nose and Throat (ENT) consultation for lesion in your mouth.  You were subsequently seen by Dr. Sogge on November 7, 2007 and December 21, 2007 to take care of your Hepatitis C.  You completed your course of Hepatitis C treatment on December 31, 2007 as stated by Dr. Sogge.

You were also seen by Dr. Nangalama on a regular basis on November 15 and 29, 2007; December 20, 2007; and January 17, 2008.  It has been noted that you refused to come to the clinic on January 24, 2008.  You were also seen on February 7, 2008, at the clinic for follow up of Hypertension and Hyperlipidemia.  During the same visit, Nurse Practitioner Bakewell discussed with you your back pain and its treatment.  The result of the MRI of your Lumbar Spine was also discussed with you.  Physical Therapy was ordered.  Cardiology and Stress Test were also ordered to address your history of chest pain.

In summary, you have been given medical attention in a timely and timely manner which meets the Standards of Medical Practice.

(Id. at 14-30.)

Grievance H-08-0202, dated April 23, 2008, addressed plaintiff's claims alleging delay in receipt of care for chest pain and Hepatitis C.  In his response to plaintiff's second level appeal, defendant Duc began by describing plaintiff's description of the problem and the action he requested:

You contend that for nine (9) days you had chest pain but the staff in the Emergency Room (ER) were too busy to provide medical care.  On January 7, 2008, the chest pain worsened so you were taken to the ER.  You feel that your life is in danger and since you did not receive medical attention immediately, you feel that this is a form of medical criminal.  To this date, you still have not seen a doctor.

You also state that your last two shots for Hepatitis C were supposed to be on December 27, 2007 but you did not receive it.  The medical staff informed you that your in between shots were too long and so you did not get the shot. You feel that this is a neglect of medical care.  On January 11 and 12, 2008 your EKG results were normal.  You state that these were all good but you should have been able to talk to a doctor sooner since now you experience constant chest pain.  This is criminal neglect of medical care.

Action Requested: 1) That the lack of and the delay of medical care be corrected so you could get proper medical care; 2) To be seen by a doctor in a timely manner; 3) That injury or chest pains be checked and be treated immediately, not after the problem or injury has cleared up; 4) That if the doctors do not have time to see you, they should refer you to the ER without delay; 5) The medical staff should always call the doctor in your case, they did not; 6) The doctor should refer you to specialist if they do not know for sure what is causing your chest pain; 7) Tests should be done right away; 8) For an Olsen Review; 9) Medical staff coordinate without the attitude; 10) That medical staff should also be written up when they do not do their job or be reprimanded and put into their personnel file; 11) To see a heart specialist; 12) To get a heart stress test; 13) To have your chest checked and tested by an expert; 14) Pain management.

(Id. at 26.)

////

////

////

Defendant Duc then described the response to plaintiff's first level grievance:

Your appeal was partially granted at the FLR.  The first level reviewer responded as follows:

Your Unit Health Record (UHR) was reviewed and showed that you have been seen in the clinic multiple times in the past three (3) months.  On January 17, 2008, you were seen in the Medial Officer's (MO) Line and prescribed Nitro 0.4 mg., one tablet as needed for chest pain; Metoprol 50 mg. daily; ECASA 81 mg. one tablet daily.  A referral to the cardiologist was initiated and a chest x-ray was also ordered.

On January 24, 2008, you were seen again in the MO Line and prescribed Prilosec 20 mg., 1 tablet everyday; Naproxen 250 mg. one tablet twice a day as needed for pain; Tramadol 50 mg. one tablet three times a day.  You were seen again on February 7, 2008 and a double mattress chrono was issued.  Laboratory work was also requested.

In summary, you have had unlimited access to medical clinic and received appropriate medical care including referral to the Specialty Clinics, Physical Therapy, ENT, Cardiology and GI Specialist.  You have had Imaging Studies, MRI, Lab Tests, EKG and appropriate medications were prescribed.  Distressed patients are sent into the Emergency Room for evaluation, treatment and care.  A call to the physician is placed for all emergencies.

As for our request for an Olsen Review, you need to submit a GA-22 to the Medical Records Department.  Your request to have the medical staff reprimanded is unfounded, and therefore denied.

(Id. at 27.)

Defendant Duc then responded to plaintiff's second level grievance as follows:

In requesting a Second Level Review, you state that it took approximately 30 days to see a doctor for your chest pain.  You still have not received an Olsen Review after submitting two requests.  Someone split the two pages of your 602 appeals by adding another page in between.  There is still a lack of delay in diagnosis, treatment and prognosis.  All this is based on saving money, looking good, not healthcare.  You also state that this is still criminal neglect of medical care or treatment.

Second Level Response: 1) Your Unit Health Record was reviewed.  You were seen on December 20, 2007 by Dr. Nangalama and on December 21, 2007 by Dr. Sogge, the GI specialist.  Thereafter, you were seen at the clinic on January 7, 2008.  You were seen on January 11, 2008 after you filed a 7362 form for chest pain on January 10, 2008.  You were then seen by Dr. Nangalama for this complaint on January 17, 2008.  You were called to the clinic to be seen again on January 24, 2008; however, you refused to come to the clinic.  You were seen again on January 29, February 21, March 6, March 13 and March 20, 2008.

[1]]From the review above, you were seen within one week after your complaint of chest pain and not 30 days later as you claimed.  2) Nobody split the two pages of your 602 at the First Level of Review.  3) There is no delay in diagnosis, treatment, prognosis or attempt at saving money, and 4) there is no criminal neglect of medical care or treatment.

(Id. at 28.)

Defendant has also provided the declaration of defendant Duc which summarizes his involvement in the grievances described above:

1. I am a medical doctor and have been licensed to practice medicine in the State of California since 1977.  I have been employed by the California Department of Corrections and Rehabilitation ("CDCR") since September 2004.  I have been a Physician and Surgeon at California State Prison at Sacramento, California ("CSP-Sac") since September 2004.  As a Physician and Surgeon, I am generally responsible for providing medical care to inmates in the facility clinics.  I examine, interview, diagnose, and treat medical and psychiatric conditions of inmates.  As part of my duties at CSP-Sac, I conduct second level reviews of inmate 602 appeals.  By virtue of my education, training, experience, and employment, I have personal knowledge of and am competent to testify as to the matters set forth in this declaration.

2. My only involvement with Mr. Galik's treatment for his back injury, mouth sores, Hepatitis C, and chest pains during the relevant time period is limited to my second level review of two 602 Appeals filed by Mr. Galik regarding the same.

3. Mr. Galik's first relevant 602 Appeal was filed on November 19, 2007, Log No. SAC H-07-2603.  Mr. Galik contended the Hepatitis C medication weakened his immune system and caused an allergic reaction.  He also complained of a mouth sore and demanded a consultation with a specialist.  He complained about a delay in treatment for a back injury.  He demanded his MRI results.  The 602 demanded more timely medical treatment.  I conducted the second level review.

4. During my second level review of the first relevant 602 Appeal filed by Mr. Galik, Log No. SAC H-07-2603, I examined Mr. Galik's Unit Health Record and related documents.  I noted Mr. Galik's medical treatment as follows:

a. Mr. Galik was seen in the clinic on August 28, 2007 and September 2, 4 and 13, 2007 for treatment of his sore throat and ear infection.

b. Mr. Galik received treatment for chronic care, HCV, and Hyperlipidemia on October 9, 2007.

c. Mr. Galik developed a skin rash on October 10, 2007.  It was initially treated with Benadryl without relief.  Therefore, Solumedrol was administered later on the same day to address the problem.

d. Mr. Galik was seen by Dr. Nangalama on October 11, 2007.  Dr. Nangalama continued his treatment with Prednisone and Hydrocortisone cream.  He also

14

ordered an Ear, Nose and Throat consultation for a lesion (mouth sore) in Mr. Galik's mouth.

e.  Mr. Galik was subsequently seen by Dr. Sogge on November 7, 2007 and December 21, 2007 for Mr. Galik's HCV.

f.  Mr. Galik completed the course of HCV treatments on December 31, 2007.

g.  Mr. Galik was seen on a regular basis by Dr. Nangalama on November 15 and 29, 2007, December 20, 2007 and January 17, 2008.

h.  Mr. Galik was treated at the clinic for follow-up of Hypertension and Hyperlipidemia on February 7, 2008.  During the visit, Nurse Practitioner Bakewell discussed Mr. Galik's back and pain treatments, and results of his MRI scan on the lumbar with him.  Physical therapy, cardiology and stress tests were ordered to address Mr. Galik's history of chest pain.

Based on the medical treatment noted above, I concluded that the [sic] Mr. Galik received medical treatment in a timely and adequate manner meeting the standards of medical practice.

5.  Mr. Galik's second relevant 602 Appeal was filed on January 30, 2008, Log No. SAC H-08-0202.  He complained of delay in medical care for his chest pain and Hepatitis C.

6.  During my second level review of the second 602 Appeal filed by Mr. Galik, Log No. SAC H-08-0202, I examined Mr. Galik's Unit Health Record and related documents.  I noted Mr. Galik's medical treatment as follows:

a.  Mr. Galik was treated by Dr. Nangalama on December 20, 2007.

b.  Mr. Galik was treated by Dr. Sogge, GI specialist, on December 21, 2007.

c.  Mr. Galik was seen at the clinic on January 7, 2008.

d.  Mr. Galik was seen again on January 8, 2008, after filing a 7362 form for chest pain on January 10, 2008.  He was again referred by Dr. Nangalama for the same complaint on January 17, 2008.  A referral to the cardiologist was initiated and a chest x-ray was also ordered.

e.  Mr. Galik was called to the clinic to be seen again on January 24, 2008, but he refused to report to the clinic.

f.  Mr. Galik was seen again on January 29, February 21, March 6, March 13 and March 20, 2008.

g.  Mr. Galik has had unlimited access to medical clinic.  He was referred to the Speciality Clinics, Physical Therapy, ENT, Cardiology, and GI Specialist.  He had imaging studies, MRI, lab tests, EKG and appropriate medications prescribed.

Based on the medical treatment noted above, I concluded that Mr. Galik was seen

1    within one week of his complaint of chest pain, not 30 days later as Mr. Galik
     claimed.  I also concluded that there was no delay in diagnosis, treatment, or
2    prognosis.  Thus, there was not criminal neglect of medical care or treatment.

3    7.  Based on my review of Mr. Galik's medical records, the medical care provided
     to Mr. Galik has been appropriate and consistent with his symptoms and medical
4    presentation.  In my medical opinion, the medical records show that his medical
     providers evaluated, treated, and otherwise competently assessed Mr. Galik's
5    condition and recommended treatment consistent with Mr.Galik's clinical
     presentation.  The treatment provided by his medical providers appeared to be in
6    compliance with the standard of care.

7    (Dkt. No. 69-2 at 1-4.)

8         Defendant argues that his responses to plaintiff's grievances, set forth above, did

9    not constitute deliberate indifference to plaintiff's serious medical needs.

10        At the outset, the undersigned observes that in his opposition to the pending

11   motion, plaintiff states that his claim regarding his back injury is his "substantive" Eighth

12   Amendment claim in this action.  (Dkt. No. 73 at 23.)  Plaintiff alleges that the only reason he

13   raised the other medical issues was to demonstrate a pattern of medical neglect.  (Id.)  In fact,

14   plaintiff's opposition addresses only his claim regarding lack of treatment for his back injury.

15   Based on these statements, the undersigned finds that plaintiff is not pursuing these other claims.

16   Accordingly, these claims are dismissed.  Fed. R. Civ. P. 41(a).

17        The undersigned also observes that defendant's summary judgment motion does

18   not address plaintiff's claim that defendant improperly denied his administrative appeals alleging

19   his inability to obtain medication refills.  The findings and recommendations addressing

20   defendant's first summary judgment motion set forth this claim.  Considering that defendant was

21   granted permission to file a second dispositive motion, his failure to address this claim is

22   puzzling.  However, as noted above, because plaintiff is not pursuing his claim alleging an

23   inability to obtain prescription refills, defendant's failure to address this claim is excused.

24        In his order adopting the findings and recommendations addressing defendant's

25   first dispositive motion, the Honorable William B. Shubb set forth the relevant legal standards

26   for reviewing plaintiff's claims against defendant Duc:

While "prison administrators" can be "liable for deliberate indifference when they knowingly fail to respond to an inmate's request for help," Jett[1], 439 F.3d at 1098, this theory of liability is viable only if the administrator is reviewing a present need for medical care and, in ignoring the need, acts in deliberate indifference to that need.

If, on the other hand, an administrator is reviewing only past conduct by subordinate that amounted to deliberate indifference to a serious medical need but that cannot be remedied at the time of the administrator's review, the administrator could not be said to be acting in deliberate indifference to that need. In such a case, however, the prisoner could still have a viable claim against the administrator based on the administrator's "action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for his conduct that showed a reckless or callous indifference to the rights of others" so long as there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal quotation marks omitted); see Jones v. County of Sacramento, No. CIV 2: 09-1025 WBS DAD, 2010 WL 2843409, * 7 (E.D. Cal. July 20, 2010) (discussing Ninth Circuit cases involving supervisors' review of subordinates allegedly unconstitutional conduct and concluding that "the Ninth Circuit has found a supervisor's conduct sufficient to establish the requisite causal link only when the supervisor engaged in at least some type of conduct before the unconstitutional incident and the supervisor knew or should have known that his conduct could cause the constitutional violation the plaintiff has suffered" (emphasis in original)).

(Dkt. No. 61 at 3-4.)

Turning to the merits of the pending motion, in his opposition plaintiff suggests that defendant Duc was aware of the allegedly inadequate medical care he received for his back other than through his review of administrative grievances.  As noted above, in the third amended complaint plaintiff alleges that he made defendant aware of his medical problems through administrative appeals and *personal communications*.  The third amended complaint does not describe these personal communications.  In his declaration, defendant Duc states that his only involvement in plaintiff's medical care regarding the medical issues raised in the third amended complaint was through his review of administrative appeals.

////

---

[1] Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

1    In his opposition, plaintiff alleges that defendant Duc was a member of the

2 rotating medical staff team treating his back pain during the seven months after he injured his

3 back. (Dkt. No. 73 at 4.) Plaintiff does not describe any personal communications he had with

4 defendant Duc during that time regarding allegedly inadequate medical care for his back injury.

5 For these reasons, the undersigned finds that plaintiff has not demonstrated that defendant Duc

6 was aware of the allegedly inadequate medical care he received for his back injury other than

7 through defendant's review of the two administrative grievances discussed above. Accordingly,

8 the undersigned considers whether defendant's involvement in these grievances demonstrated

9 deliberate indifference.

10    Grievance H-07-2603 addressed plaintiff's claims regarding treatment of his back

11 injury. In this grievance, plaintiff claimed that he had not been informed of the results of his

12 MRI. As discussed above, in the third amended complaint, plaintiff claims that on August 13,

13 2007, Katherine Blackwell told him that his back injury had "healed over" and there was nothing

14 to be done to remedy the lost mobility and discomfort he would experience. (Dkt. No. 27 at 4.)

15 In his opposition, plaintiff claims that he broke his back. (Dkt. No. 73 at 9.) Plaintiff contends

16 that in his administrative grievance, he informed defendant Duc that he wanted medical treatment

17 for his back before it healed over. (Id. at 7.) Plaintiff claims that he informed defendant that he

18 had not received an MRI of his back until five months after the injury and had not been informed

19 of the results three months after the MRI was performed. (Id.) Attached to plaintiff's opposition

20 are medical records which plaintiff claims support his claims.

21    Attached as an exhibit to plaintiff's opposition is a report dated June 13, 2007,

22 titled "Examination: Thoraculumbar Spine 2 VWS." (Id. at 16.) This report concludes, "Mild

23 compression fractures of T7 and T8 which appear old. A superimposed acute fracture could not

24 be excluded. If clinically indicated, an MRI could be obtained." (Id. at 16.)

25    Attached as an exhibit is the result of an MRI on plaintiff's lumbar spine on

26 August 13, 2007. (Dkt. No. 73 at 14.) This report does not state that plaintiff had a broken back.

1   Instead, the section of the report titled "Impression" stated, "Old, moderate inferior end-plate

2   wedge compression deformities of T7 and T8.  Mild spondylitic bulge at T7-8 and T8-9.  No

3   neurologic compromise is identified.  No herniated nucleus is seen."  (Id. at 15.)

4          Also attached is a report dated August 11, 2008, titled "Cervical Spine, 3 VWS."

5   (Id. at 13.)  This report concludes, "Extensive uncovertebral hypertrophic changes. Loss of disc

6   height and osteophystosis seen at C5-C6.  Need for further assessment by MRI of the cervical

7   spine should be judged on a clinical basis."  (Id.)

8          At the time defendant Duc issued his response to grievance H-07-2603 on

9   February 25, 2008, plaintiff had received an MRI of his back.  In his response to this grievance,

10  defendant Duc stated that on February 7, 2008, Nurse Practitioner Bakewell discussed the results

11  of the MRI with plaintiff.  As indicated above, the MRI report does not state that plaintiff had a

12  broken or fractured back.  There is no evidence in the record that at the time defendant Duc

13  reviewed grievance H-07-2603 that plaintiff's back required further treatment.  While the August

14  11, 2008 report from the examination of plaintiff's cervical spine called for possibly another MRI

15  of plaintiff's back, this report was issued after defendant Duc addressed the two administrative

16  grievances discussed above.

17         At best, in grievance H-07-2603, plaintiff asked defendant Duc to review alleged

18  past misconduct in connection with the treatment of his back injury.  The record contains no

19  evidence linking Duc to any alleged wrongful conduct by other prison officials regarding the

20  treatment of plaintiff's back injury.  Accordingly, defendant Duc should be granted summary

21  judgment as to this claim.

22         Although plaintiff abandoned his other claims, the undersigned observes that

23  defendant Duc's responses to plaintiff's appeals regarding these issues do not demonstrate

24  deliberate indifference.  In his complaint, plaintiff alleges that he suffered mouth sores beginning

25  in August 2007, which continued to bother him through October 2008.  In his February 25, 2008

26  responses to appeal no. H-07-2603, defendant Duc stated that plaintiff had been referred for an

1   Ear, Nose and Throat consultation for the lesion in his mouth.  This response does not

2   demonstrate deliberate indifference to plaintiff's need for medical care for his mouth lesion.

3   Rather, this response indicates that plaintiff was going to receive treatment for this condition.

4           At the time defendant Duc reviewed grievance H-07-2603 on February 25, 2008,

5   plaintiff had finished his hepatitis C treatment and the rash allegedly caused by this treatment had

6   been successfully treated.  For these reasons, defendant Duc's response to plaintiff's grievance

7   complaining about the treatment he received for this rash did not constitute deliberate

8   indifference.

9           In his responses to grievance H-07-2603, defendant Duc informed plaintiff that he

10   had, in fact, completed his hepatitis C treatment on December 31, 2007, as stated by Dr. Sogge.

11   After reviewing plaintiff's records, defendant Duc concluded that plaintiff's claim that he did not

12   receive his final hepatitis C injections was not correct.  Defendant Duc's response to plaintiff's

13   appeal alleging that he was denied his final hepatitis treatment did not constitute deliberate

14   indifference.

15           In his response to appeal H-08-0202, defendant Duc described plaintiff's

16   treatment for chest pain.  Defendant Duc also refuted plaintiff's claim that it took 30 days for

17   plaintiff to see a doctor for chest pains.   Because plaintiff's medical records, as described by

18   defendant Duc in his response to plaintiff's appeal, indicated that plaintiff had received timely

19   care for his chest pains, including medication, a referral to a cardiologist and a chest x-ray,

20   defendant Duc's denial of the grievance raising this claim did not constitute deliberate

21   indifference.

22           For the reasons discussed above, defendant Duc should be granted summary

23   judgment.  Defendant Duc also argues that he is entitled to qualified immunity.  Because the

24   undersigned finds that defendant Duc is entitled to summary judgment as to the merits of

25   plaintiff's Eighth Amendment claim, the issue of qualified immunity need not be further

26   ////

1   addressed.[2]

2            Accordingly, IT IS HEREBY RECOMMENDED that defendant Duc's summary

3   judgment motion be granted, and this case be closed.

4            These findings and recommendations are submitted to the United States District

5   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

6   one days after being served with these findings and recommendations, any party may file written

7   objections with the court and serve a copy on all parties.  Such a document should be captioned

8   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

9   objections shall be filed and served within fourteen days after service of the objections.  The

10  parties are advised that failure to file objections within the specified time may waive the right to

11  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12  DATED:  August 27, 2012

13

14                                         _____

15                                         KENDALL J. NEWMAN
                                           UNITED STATES MAGISTRATE JUDGE

16  gal152.sj(3)

17

18

19  _____

20       [2]   "The doctrine of qualified immunity protects government officials from liability for
    civil damages insofar as their conduct does not violate clearly established statutory or
21  constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555
    U.S. 223, 231, 129 S. Ct. 808, 815 (2009).  The defendant bears the burden of establishing
22  qualified immunity.  Crawford-El v. Britton, 523 U.S. 574, 586-87 (1998).
             The Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), outlined a two-step
23  approach to qualified immunity.  The first step requires the court to ask whether "[t]aken in the
    light most favorable to the party asserting the injury, do the facts alleged show the officer's
24  conduct violated a constitutional right?"  Saucier, 533 U.S. at 201.  If the answer to the first
    inquiry is yes, the second inquiry is whether the right was clearly established: in other words,
25  "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation
    he confronted."  Saucier, 533 U.S. at 201.

26